UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRACEY WONG,

                Plaintiff,

    --Against--

BLIND BROOK-RYE UNION FREE
SCHOOL DISTRICT, JOHNATHAN ROSS,
*Individually* and PATRICIA LAMBERT,
*Individually*,

                Defendants,
------------------------------------------------------------------X

**COMPLAINT**

<u>JURY TRIAL
DEMANDED</u>

      Plaintiff, TRACEY WONG (hereinafter, "plaintiff" or "Ms. Wong"), by her attorneys, LAW OFFICES OF AMBROSE WOTORSON, alleges as follows:

I.    <u>INTRODUCTION</u>

      1.    Plaintiff seeks to vindicate her civil rights because she has been subjected to employment discrimination on account of her age and her protected activities. Indeed, plaintiff, an Asian-American woman and the only visibly non-white faculty member, was told that she "did not fit in the school culture" of a predominantly white school, and that she would be

1

terminated if she did not resign. Plaintiff refused to resign and defendants terminated her effective July 3, 2018.

2. To date, defendants have only offered pretextual explanations for plaintiff's mistreatment and termination.

II. JURISDICTION

3. This court has jurisdiction over the subject matter of this Complaint under the 42 U.S.C. Sections 1981 and 1983.

4. Venue is proper since the complained of acts occurred in this judicial district.

III. PARTIES

5. TRACEY WONG, (hereinafter, Plaintiff") is a 50-year old Asian-American woman who resides at 2 Country Club Lane, Scarborough, NY 10510 and she sues on her own behalf. At all relevant times, she was employed with municipal defendant, BLIND BROOK-RYE UNION FREE SCHOOL DISTRICT as the Library Media Specialist.

6. She has been so employed since August 2017.

7. Defendant, BLIND BROOK-RYE UNION FREE SCHOOL DISTRICT (hereinafter "defendant" or "the district"), is an employer and a municipal school district in Westchester County, New York. Its headquarters is located at 390 North Ridge Street Rye Brook, NY 10573. It may sue and

be sued, and at all relevant times, it employed plaintiff as the Library Media Specialist. At all relevant times to this action, defendant, BLIND BROOK-RYE UNION FREE SCHOOL DISTRICT, acted under color of state law and pursuant to its own practices, customs and policies.

9. Defendants, JOHNATHAN ROSS, *individually,* and PATRICIA LAMBERT, *individually,* are employed with municipal defendant as the Superintendent and High School Principal, respectively. At all relevant times they supervised plaintiff, and abetted the mistreatment against her.

10. As well, individual defendants, at all relevant times, acted under color of state law and were responsible for plaintiff's mistreatment and termination.

IV.   FACTUAL AVERMENTS

*Background*

11. Plaintiff is an Asian American woman who is 50 years old, having been born on September 27, 1967. Upon information and belief, she was one of the oldest faculty members employed by respondent school district at all relevant times, and she was the only noticeably non-white faculty member.

12. Ms. Wong has Master's Degrees in Elementary School Education, K – 8 Reading and Library Information Technology. Her work is nationally recognized and approved, as she won national awards in Library Services in 2018 and in 2016. She was also tenured at one or more other school districts before her employment with defendant.

13. During her interview for the Library Media Specialist position, the Superintendent, Jonathan Ross, asked plaintiff how old her children were. Ms. Wong found the question to be odd, misplaced and inappropriate. She reasonably concluded that the question was an attempt to determine her age.

14. In any event, municipal defendants eventually hired plaintiff, but despite her superior qualifications, plaintiff was placed on a four-year probationary track instead of a three-year probationary track, which is standard and customary for persons with her qualifications and her being previously tenured. Upon information and belief, this discrepancy is a reflection of defendants' early ambivalence towards plaintiff because of her age. In fact, when plaintiff initially told Principal Lambert that she would not be taking on the added responsibility of supervising the school newspaper, Principal Lambert responded to plaintiff by asking her, "how will you get your tenure then?" Lambert then said to plaintiff, "…besides,

your kids aren't small. You don't need to be home." Plaintiff reasonably understood that Lambert was saying that she could and should take on the additional responsibility because plaintiff was an older woman with grown children, and that there was no need for her (plaintiff) to rush home each evening to take care of them. Plaintiff then ended up relenting and agreeing to supervise the newspaper.

15. When plaintiff started at Blind Brook-Rye, the library was averaging about 189 patrons a day, but through her efforts, the library began to have as many as 245 patrons a day, and eventually averaged 225 patrons a day.

16. Further, all of Ms. Wong's performance evaluations with Blind Brook-Rye have been "effective," and the Board President, Jeff Diamond, thanked Ms. Wong in mid-December 2017, for encouraging "...creativity and moving [students] toward a more collaborative mindset." Further, Mr. Diamond told Ms. Wong to "…not let naysayers discourage [her] work", because it "…is truly a much needed breath of fresh air!"

*Termination*

17. Yet, Ms. Wong had been working with Blind Brook for less than a year when she learned on April 12, 2018, that she would not be allowed to continue her probationary employment, which had been

5

scheduled to last four (4) years. Indeed, Patricia Lambert, the High School Principal, told plaintiff that the cessation of her employment was occurring because she (plaintiff) "…did not fit in the school culture."

18. On April 16, 2018, Ms. Wong received a certified letter urging that she resign by June 1, 2018, otherwise, a recommendation would be made to the Board of Education that she be terminated.

19. Ms. Lambert told Ms. Wong that she would give Ms. Wong a positive reference letter in light of the difficulties that Ms. Wong was likely to encounter securing comparable work with comparable pay.

20. Yet, two days later, when Ms. Wong later requested a copy of the reference letter because she had found an attractive opening for a school librarian at another school district, Ms. Lambert insisted that Ms. Wong immediately tender her letter of resignation first, in exchange for the reference letter.

*Protected Activities*

21. In late October 2017, Ms. Wong had two grants get funded that did not require the district's support. One of them had been written over the summer before Ms. Wong was employed and the other was written just after she started working with Blind Brook-Rye.

22. However, on November 2, 2017 Principal Lambert harshly criticized Ms. Wong and instructed her to not accept the grant materials because both grant proposals appeared to have been written for diverse populations, and Blind Brook is predominantly white.

23. It was made clear to Ms. Wong that the district wanted to maintain its public profile as being predominantly white. Ms. Wong protested to Principal Lambert and Todd Richard, Middle School Principal, that programs encouraging diversity should be pursued, regardless of the predominate race in the district.

24. In mid-December 2017, a small group of predominantly white parents organized via Facebook to complain about approved collaborative programs that Ms. Wong had instituted in the library that were allegedly "distracting" and causing students to experience "stress" from constant "disruptions" and "noise," which allegedly included telling students to "bark" like a dog.

25. Those allegations were completely false, and Ms. Wong not only responded that those allegations were false, but invited the parents to come and see for themselves.  Plaintiff also possessed video footage of the packed library being quiet at all relevant times, so she promptly informed Superintendent Ross, on December 13, 2017, and Principal Lambert, on

December 15, 2017, that those parents' claims were false. Yet, the district did not do anything to support plaintiff during this avalanche of misplaced criticism from those particularly aggressive parents.

26.     On November 13, 2017, Ms. Wong informed Principal Lambert and Assistant Principal Schuelein that a student called her a "racist" because she ejected the student from the Library after he had been disruptive. Ms. Wong explained to the district that she appropriately responded to the student's racism allegations by telling him that he was a "…white male in a room full of other white males and that he was the only one being asked to leave," so her actions in ejecting him were not "racist." Plaintiff also said to Principal Lambert and Assistant Principal Schuelein that she told the student that his comments, under the circumstances, could be perceived as being racist against her because she is non-white.

27.     Critically, Superintendent Ross promised Ms. Wong -- in writing – that her pre-tenure, probationary employment as the Library Media Specialist, would be for a definite term of four (4) years, *without any reservation* on that definite term of employment.

*Damages*

28.     As a proximate result of defendants' illegal acts towards plaintiff, plaintiff has suffered a loss of earnings, stipends and other

employment benefits.

29.     As a further proximate result of defendant' illegal actions towards plaintiff, plaintiff has suffered impairment and damage to plaintiff's good name and reputation.

30.     As a further proximate result of defendant' illegal actions towards plaintiff, plaintiff has suffered mental anguish and emotional injuries.  For example, defendants relayed confidential employee information of her pending termination to at parents and staff members, causing her to suffer great humiliation after students and staff began approaching her to ask about her being fired.

31.     As a further proximate result of defendants' illegal actions towards plaintiff, plaintiff, who is terminated effective July 3, 2018, has been unable to ameliorate her employment situation, despite her best efforts to do so, including searching for employment at other school districts.

32.     Defendants' illegal actions were willful, outrageous and were malicious, and were intended to punish plaintiff, and were done with reckless indifference to plaintiff's protected rights, entitling plaintiff to punitive damages as against the individual defendants.

33.     Defendants' illegal actions towards plaintiff were done pursuant to municipal defendant's own practices, customs and policies of

discriminating against educational professionals on the basis of their ages and their protected activities.

V.   CAUSES OF ACTION

FIRST CAUSE OF ACTION  -- Retaliation

33.   Plaintiff hereby repeats and realleges each allegation contained in each numbered paragraph above.

34.   Defendants subjected plaintiff to unlawful and intentional retaliation by terminating her employment prior to the expiration of her four years of probation on account of her protected activities as a non-white and Asian American woman in advocating for diversity and racial understanding, and who opposed racial micro-aggressions against herself as detailed in the instant Complaint.

35.   Thus, defendants violated 42 U.S.C. Section 1981, as secured by 42 U.S.C. Section 1983.

SECOND CAUSE OF ACTION  -- Retaliation

36.   Plaintiff hereby repeats and realleges each allegation contained in each numbered paragraph above.

37.   Defendants subjected plaintiff to unlawful and intentional retaliation by terminating her employment prior to the expiration of her four years of probation on account of her protected activities as a non-white and

Asian American woman in advocating for diversity and racial understanding, and who opposed racial micro-aggressions against herself, as detailed in the instant Complaint. This mistreatment was different from how defendants treated similarly situated educational professionals who did not engage in such protected activities.

38. Thus, defendants violated the 14th Amendment of the United States Constitution, as made actionable by 42 U.S.C. Section 1983.

THIRD CAUSE OF ACTION  -- Age Discrimination

39. Plaintiff hereby repeats and realleges each allegation contained in each numbered paragraph above.

40. Defendants subjected plaintiff to unlawful and intentional Age discrimination by treating her differently than similarly situated employees who are younger, such as, for example, by seeking to determine her age during an employment interview, by failing to grant her the customary three years of probation (instead of four), and by making judgments about her professional commitment, all because of her age, which was different from how they treated similarly-situated education professionals who were younger than 40, all of which is detailed in the instant Complaint.

41.  Thus, defendants violated the 14th Amendment of the United States Constitution, as made actionable by 42 U.S.C. Section 1983.

WHEREFORE, plaintiff prays that this Honorable Court grant her:

a.  Back pay and the value of lost benefits up to the date of trial for any unfair failures to promote her and grant an annual stipend to her;

b.  Damages, both compensatory and punitive, for the wrongs alleged herein and requests that this court also grant:

c.  Reasonable attorneys' fees and costs in prosecuting this action; and;

d.  Any other equitable relief that the Court deems appropriate, including reinstatement.

Dated: New, New York
June 15, 2018

Respectfully Submitted,
Law Offices of Ambrose Wotorson
By: ***Ambrose W. Wotorson, Jr***.
225 Broadway, 41st Floor
New York, New York 10007
646-242-3227
609-598-0567 (c)
Loaww1650@aol.com